UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN MENZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:04CV77 (RWS) |
| | ) | |
| vs. | ) | |
| | ) | |
| THE PROCTER & GAMBLE | ) | |
| HEALTH CARE PLAN; et al., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S MOTION FOR INTERIM FEES AND
COSTS WITH LEAVE TO FILE INTERIM FEE AND
COST SPECIFICATION UPON DETERMINATION

Comes now Plaintiff Steven Menz, by attorneys, and respectfully moves this Court for an Order granting him interim attorney's fees and costs and leave to file an interim fee and cost specification upon determination.  As grounds for said Motion, Plaintiff states as follows:

1.      During all times relevant, Plaintiff has been eligible to receive insurance benefits from the Procter & Gamble Health Care Plan ("the Plan").

2.      On or about October 3, 2002, Plaintiff's left arm was amputated above the elbow as a result of an accident.  Plaintiff filed a claim with the Plan seeking benefits for a myoelectric prosthetic arm (a.k.a. a "Utah arm").

3.      In response to his claim, Defendant Healthlink sent Plaintiff for three (3) different prosthetics evaluations, which all resulted in determination that Plaintiff should receive a myoelectric prosthetic arm (a.k.a. a "Utah arm").  However, Defendants ignored all three (3) of their own evaluations.

1

4.      Rather, in denying the myoelectric arm, Defendants relied on an unidentified mystery reviewer which based his or her (?) opinion solely on speculation that Plaintiff would be dissatisfied with a myoelectric prosthetic arm.  He or she never examined Plaintiff.

5.      Defendants denied Plaintiff the myoelectric arm based on lack of "medical necessity".  However, the Plan does not require medical necessity for provision of prosthetic devices.

6.      In denying the myoelectric arm, Defendants failed to identify any Plan provision on which they relied in denying Plaintiff a myoelectric arm.

7.      In denying the myoelectric arm, Defendants failed to include a description of the Plan's review procedures, the time limits applicable to such procedures, and a statement of Plaintiff's right to bring a civil action under Section 502 of ERISA.

8.      Defendants denied Plaintiff's first administrative appeal based solely on the unidentified mystery reviewer's speculation that Plaintiff would be dissatisfied with the myoelectric arm.  Again, the mystery reviewer did not examine Plaintiff.

9.      Defendants denied Plaintiff's first appeal based on lack of "medical necessity" although the Plan does not require medical necessity for provision of prosthetic devices.

10.     In denying Plaintiff's first appeal, Defendants again provided no reference to any Plan provision on which the determination was based.

11.     Plaintiff provided medical evidence of urgency with his second appeal.

12.     Despite Plaintiff's provision of medical evidence of urgency, the Plan failed to rule on Plaintiff's second appeal within seventy-two (72) hours.

13.     Weeks after expiration of the seventy-two (72) hour time limit, Defendants denied Plaintiff's second appeal based only on review by the unidentified mystery reviewer who never examined Plaintiff.

14.     In denying the second appeal, Defendants again applied the "medically necessary" standard without identifying any Plan provision relied upon.

15.     In denying the second appeal, Defendants again failed to identify any Plan provision upon which the denial was based.

16.     Defendants' second appeal determination contains no notice of further requirements for administrative exhaustion nor any notice of further appeal procedures.

17.     In rendering the second determination, Defendants failed to consider Plaintiff's medical evidence that he cannot use a conventional prosthesis due to previous injuries to his right shoulder and right wrist, weakness and instability to his right shoulder and wrist, and future damage thereto.

18.     Plaintiff and his wife were told by Defendant Procter and Gamble that no further administrative appeals were available and none would be offered.

19.     Based on the foregoing, Plaintiff decided to file suit.

20.     On January 16, 2004, Plaintiff's attorney faxed and e-mailed to all Defendants notice of intent to obtain a Temporary Restraining Order ("TRO") on January 21, 2004.  See copy of letter from Plaintiff's counsel, Mark Potashnick, to Defendants dated January 16, 2004. Attached to the letter was a third report of Dr. Aksana Volshteyn of the Washington University Medical Center dated December 31, 2003 which reiterated her two (2) earlier reports submitted to the Plan during the second administrative appeal.

21.     The day before suit was filed, Jennifer Ting, Procter & Gamble's benefits counsel, proposed to raise a new defense, that the care was not covered (excluded) because it was a workers compensation covered event.  Such defense had not previously appeared in any denial letter and neither Plaintiff nor his wife had ever heard about it.

22.     Plaintiff filed this action on January 21, 2004 along with his Application for TRO, Preliminary Injunction and Permanent Injunction.  The primary objective of suit was to obtain benefits for a myoelectric prosthesis.

23.     At a conference before the Court on January 21, 2004 regarding the Application for TRO, Defendants requested continuance of the TRO hearing until Monday, January 26, 2004 in order to determine whether the matter could be resolved without a TRO hearing.  Plaintiff's consented to such extension.  The Court re-scheduled the TRO hearing for January 26, 2004 at 3:30 p.m.

24.     On Friday, January 23, 2004, Defendants again requested continuance of the TRO hearing until Thursday, January 29, 2004 in order to determine whether the matter could be resolved without a TRO hearing.  Plaintiff's consented to such extension.  The Court re-scheduled the TRO hearing for January 29, 2004 at 3:00 p.m.

25.     On the afternoon of Wednesday, January 28, 2004, Defendants' attorney notified Plaintiff's attorney that Defendants had decided to voluntarily provide Plaintiff benefits for the myoelectric prosthetic arm without a TRO hearing.

26.     The parties appeared before the Court on Thursday, January 29, 2004 for a status conference.  Therein, Defendants' attorney informed the Court that his clients had decided to voluntarily provide Plaintiff the myoelectric prosthetic arm sought in this litigation.

27.    On or about February 2, 2004, Defendants issued Plaintiff a letter stating "it has been determined that benefits will be allowed for the myoelectric prosthesis".

28.    Based on Defendant's voluntary change of position, on February 3, 2004 this Court issued an Order denying Plaintiff's Motion for Temporary Restraining Order as moot and denying Plaintiff's Motion for Preliminary Injunction without prejudice.

29.    Obviously, this suit brought forth Defendant's voluntary reversal of their three (3) earlier denials of benefits.

30.    Under the Eighth Circuit's test for an awarding attorneys' fees in ERISA cases, Plaintiff is entitled to an award of interim attorney fees and costs as follows:

     a.    Defendants actions were highly culpable and performed in bad faith as demonstrated by:

         1.    Defendants suddenly reversed their determination after suit was filed, without any new medical evidence,

         2.    Defendants completely disregarded applicable regulations in their processing and appeal of Plaintiff's administrative claim,

         3.    Defendants' completely failed to advise Plaintiff of the review procedures and time limits in their initial denial,

         4.    Defendants repeatedly failed to identify their mystery reviewer(s).

         5.    Defendants blatantly ignored Plaintiff's medical evidence.

         6.    Defendants improperly imposed the inapplicable standard of "medical necessity",

         7.    Defendants repeatedly failed to identify any Plan provision relied upon in denying benefits, and

        8.      Defendants attempted to substitute a new reason for denial on the eve before litigation was filed,

    b.      Defendants, especially Procter & Gamble itself, are very large companies with ample ability to pay the attorney's fees sought,

    c.      An award of attorneys' fees will certainly deter Defendants and others from similar culpable, bad faith, and dilatory conduct, and

    d.      The medical information in Defendants' possession clearly established Plaintiff's need for a myoelectric prosthesis and entitlement to such benefits prior to the suit and Plaintiff was forced to incur the burdens of suit in order to receive benefits to which he was clearly entitled.

31.     Also, as Plaintiff sought medical treatment, rather than monetary damages herein, the only feasible means to compensate his counsel for obtaining the necessary treatment is to award fees.  Defendants only intend to pay the prosthetics company.  Plaintiff himself is financially unable to pay his counsel, in part due to his inability to effectively perform his occupation without the myoelectric arm.

32.     Plaintiff is entitled to an award of interim fees and costs under the "catalyst theory" which still applies to ERISA cases.

33.     For such reasons, this Court should award Plaintiff his attorney's fees and costs.

34.     Plaintiff's Memorandum in Support of this Motion is attached hereto and fully incorporated herein by reference.

WHEREFORE, this Court should issue an Order granting Plaintiff interim attorney's fees and costs and permitting Plaintiff leave to file his interim fee and cost specification upon such determination.

6

Respectfully Submitted,


_____/s Sheldon Weinhaus_____
Sheldon Weinhaus, #4670
906 Olive Street, Suite 900
St. Louis, Missouri  63101
Telephone: (314) 621-8363
Facsimile: (314) 621-8366
and

MARK POTASHNICK, P.C.
Mark Potashnick, #35970
111 Westport Plaza, Suite 600
St. Louis, Missouri  63146
Telephone: (314) 275-9150
Facsimile: (314) 275-9151

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The foregoing Plaintiff's Motion for Interim Fees and costs with Leave to File Interim Fee and Cost Specification Upon Determination, and Memorandum in Support thereof, were served on the following attorneys of record for Defendants by electronic case filing on this 13th day of February, 2004:

| | |
|---|---|
| Mr. Daniel O'Keefe, Esq. | Mr. Robert Golterman, Esq. |
| Mr. Charles Jellinek, Esq. | Mr. Neal Perryman, Esq. |
| Bryan Cave | Lewis, Rice & Fingersh, L.C. |
| One Metropolitan Square | 500 North Broadway, Suite 200 |
| 211 North Broadway, Suite 3600 | St. Louis, Missouri  63102-2147 |
| St. Louis, Missouri  63102 | |


_____/s Mark Potashnick_____

7